IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

RECEIVED
2012 DEC 28 PM 4: 0

| | | |
|---|---|---|
| TONI MOORE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| VS. | ) | NO. _____ |
| | ) | JURY DEMANDED |
| AFC, INC, AUTOMOTIVE FINANCE | ) | |
| CORPORATION, KAR AUCTION | ) | |
| SERVICE, INC. AND ADESA, INC. | ) | |
| | ) | |
| Defendants. | ) | |

**COMMPLAINT AND JURY DEMAND**

Comes the Plaintiff Toni Moore, *Pro Se*, and would state unto this Honorable Court as follows:

1. Plaintiff brings this action under Title VII of the Civil Rights Act of 1964, 42 U.S.C.S. 2000e, *et seq.*, the Tennessee Human Rights Act, Tenn. Code Ann. § 4-21-101, et seq. and § 4-21-301 et seq. and § 4-21-401 for hostile work environment, race discrimination, sex discrimination, retaliation, and breach of contract.

**Jurisdiction and Parties**

2. Plaintiff is a citizen and resident of Cordova, Shelby County, Tennessee.

3. Defendant, Automotive Finance Corporation, doing business as AFC, Inc. (hereinafter AFC, Inc.) is an Indiana corporation operating a capital funding source for the used vehicle industry with offices located in Memphis, Shelby County, Tennessee. The agent for service of process is Corporation Service Company, 2908 Poston Avenue, Nashville, Tennessee, 37203-1312. AFC, Inc. is a business unit of Defendant, KAR Auction Services.

4. Defendant, KAR Auction Services, Inc. is a Delaware corporation not authorized to conduct business in the State of Tennessee. Pursuant to Tenn. Code Ann. § 48-15-104(b), the Tennessee Secretary of State is the proper agent for service of process. Service shall be sent to James P. Hallett, CEO, 13085 Hamilton Crossing Blvd., Carmel, Indiana, 46032.

5. Defendant, ADESA, Inc. is a Delaware corporation operating a capital funding source for the used vehicle industry with offices located in Memphis, Shelby County, Tennessee. The agent for services of process is Corporation Service Company, 2908 Poston Avenue, Nashville, Tennessee, 37203-1312. ADESA, Inc. is a business unit of Defendant, KAR Auction Services.

6. Defendant AFC, Inc. employed Plaintiff at all times relevant to this action.

7. Defendants are responsible for all acts committed by its agents, representatives, and employees, within the scope of their employment.

8. The amount in controversy exceeds seventy-five thousand ($75,000) Dollars.

9. Jurisdiction in this case is based upon 28 U.S.C. § 1331 and the Court has pendant jurisdiction over the state law claims. Jurisdiction is also based upon diversity jurisdiction as stated in 28 U.S.C. § 1332.

## FACTS

10. The cause of action alleged in this complaint arose in Memphis, Shelby County, Tennessee.

11. Plaintiff began working for AFC, Inc., on or about February 2007. Plaintiff was hired by AFC, Inc. to assist with loan collections.

12. In the course of performing her job, Plaintiff was subjected to hostile work environment, race discrimination, sex discrimination, retaliation, and breach of contract.

13. Plaintiff worked under Branch Manager Frank King, who made repeated racist and sexist

comments in front of her, other co-workers, and customers.

14. When Plaintiff was first hired, she was told by Mr. King that he did not know she was black from speaking to her on the phone. Plaintiff received references from two employees that didn't mention her race. Otherwise, Mr. King stated that he would not have hired Plaintiff.

15. In 2007, Mr. King made comments in front of his friends, Plaintiff and her three sons and daughter, calling her a "coon." She approached him on the job and asked him to stop making racist and sexist comments.

16. In 2010, Mr. King continued to make jokes about how black people should not be in Collierville, TN (an upscale community), how the fact that she had a G.E.D. demonstrated that she was not intelligent, how she should live with other black people in a location like Clarksdale, Mississippi, where black people wear moo-moos and house shoes, and how she needed to go "down in the Delta" to see how real black people act. That same year, Mr. King asked Plaintiff for her assistance in trying to get his daughter approved for Social Security because "black people know how to work the system." He made this comment in front of Ms. Hensley.

17. Mr. King was threatened by the fact that Plaintiff's son plays lacrosse in Houston High School (apparently traditional "white activities"), and he therefore had to compete with her by telling him of his child's 'whiter' activities.

18. In 2011, Plaintiff relocated to the Houston, Texas branch and was promoted to an Assistant Branch Manager position. When she got there, the branch could not pass an audit. They passed an audit late in 2011 due to her help. In January 2012, she received her first write up from Drew Schull. He solicited Ms. Lopez (who was previously being considered for the job that Plaintiff had just taken, therefore Ms. Lopez's subordinate) to write a letter about how she created a hostile write-up. Ms. Lopez later admitted to Plaintiff that Drew had asked her

to write the letter. Further, Mr. Schull discussed Plaintiff's PTO time with her co-workers, and how much it had allegedly cost the company. In February 2011, she received her first write up for not calling her after a doctor's appointment. In February 2011, she sent an e-mail to corporate HR Michell Daidone

19. In May 2012, when Plaintiff tried to return to the Memphis office, AFC would not support Plaintiff's return to Memphis even though a position was available and to allow her to receive treatment for her son, who had recently attempted suicide. Plaintiff texted Mr. King about whether the position was still available. Mr. King stated that the company was down to its two final applicants. In June 2012, she applied for the position. In July, Plaintiff received an interview for the position. Plaintiff was told that she was not qualified. While she had just taken the Profile XT Assessment test to go to Houston, Mr. King wanted to administer the test again in July 2012. AFC hired another female who had no experience with the automobile industry.

20. Regarding Plaintiff's performance, Plaintiff had five passing audits in Memphis, two passing audits in Houston. Neither branch was able to pass the audits before she was working there. Collections were initially down in Memphis, but she got them up to 100%. Collections were also down in Houston, but she raised them to 100%. Drew Schull even stated to Plaintiff how impressed he was with her performance. She has received multiple recommendations on her LinkedIn profile from AFC employees, including Carrie Waters (corporate trainer), Assistant General Manager from ADESSA, Inc., a branch manager from Little Rock; however she can't even get her old job back. Her job description changed but her responsibilities stayed the same. She covered for Mr. King because of his daughter's condition.

21. Joe Keadle (Vice President of Operations) overheard private conversations between Mr. King and Plaintiff. On one occasion, John Hamer (Chief Operating Officer) personally witnessed

Plaintiff crying in the corporate building. He spoke to Michell Daidone, who had to follow up with Plaintiff because she was so distraught by the way that she was treated regarding setting up her FMLA status during the time that her natural mother was dying of brain tumors.

22. Plaintiff filed an Equal Employment Opportunity Commission charge against AFC, Inc. and a right to sue letter was issued to Plaintiff.

23. Plaintiff filed this case within ninety (90) days of the issuance of the right to sue letter.

## CAUSES OF ACTION

24. Plaintiff would state that the Defendants created a hostile work environment for the Plaintiff.

25. Plaintiff would further state that the Defendants' actions in discharging the Plaintiff are in violation of Title VII and the Tennessee Human Rights Act.

26. Plaintiff would state that the Defendants engaged in race discrimination, sex discrimination, and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C.S. 2000e, *et seq.*, the Tennessee Human Rights Act, Tenn. Code Ann. § 4-21-101, et seq. and § 4-21-301 et seq. and § 4-21-401 et seq.

27. Defendants breached their employment contract with Plaintiff by their failure to pay her salary and other earned benefits of employment.

**PREMISES CONSIDERED, PLAINTIFF PRAYS:**

1. Plaintiff be granted judgments against the Defendants in the amount of $1,000,000 for compensatory and other damages suffered by her including, but not limited to, damages for pain and suffering, humiliation and embarrassment, back pay, interest on back pay, lost benefits, injury to character and personal injury.

2. Defendants be ordered to reinstate Plaintiff, with all accumulated salary rights and benefits as if continuously employed from the date of application and/or for a judgment for front pay with all accumulated salary rights and benefits.

3. Plaintiff further prays for punitive damages and pre-judgment interest, attorney's fees, litigation costs, and the cost of this cause.

4. Plaintiff prays for a jury to try this cause.

5. Plaintiff prays for such other further relief as may be necessary and appropriate.


Respectfully submitted on December 28, 2012.

*/s/ Toni Moore*

Toni Moore
*Pro Se Plaintiff*
10148 Hammersmith Lane
Cordova, TN 38016
(901) 326-8616